**Anna LEMASTERS, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. C 2 74-508.**

United States District Court, S. D. Ohio, E. D.

April 9, 1975.

Frank J. Neff, Barkan, Barkan & Neff, Columbus, Ohio, for plaintiff.

Thomas D. Thompson, Asst. U. S. Atty., William W. Milligan, U. S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, Chief Judge.

This is an action for review of a final decision of the Secretary of Health, Education and Welfare that plaintiff is not entitled to widow's benefits under the Federal Coal Mine Health & Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.*

This matter is before the Court on cross-motions for summary judgment.

On August 15, 1972, plaintiff filed her application for widow's benefits under the Act. The application was denied initially, on proposed reconsideration, and on final reconsideration by the Bureau of Disability Insurance of the Social Security Administration. Plaintiff requested a *de novo* hearing before an administrative law judge. The hear-

ing was held before the administrative law judge on April 24, 1974, and May 6, 1974. Plaintiff and Dr. Joseph F. Tomashefski, a medical consultant, testified. On June 6, 1974, the administrative law judge issued a decision finding that plaintiff was not entitled to benefits under the Act. On August 27, 1974, the Appeals Council of the Social Security Administration adopted the decision of the administrative law judge as the final decision of the Secretary of Health, Education and Welfare.

The following finding of fact by the administrative law judge is fully supported by the record:

The documentary evidence and the oral testimony reveal that the deceased miner was born in November 1915; that he was employed in strip mining for about 30 years; and that he died on August 10, 1972. The death certificate, which was signed by a physician who attended the miner from June 1968 to September 1971, shows the cause of death as acute coronary thrombosis due to coronary artery disease. The death certificate states that death occurred instantly at 5:15 p. m., and that no autopsy was performed. In a statement dated August 12, 1972, the claimant stated that her husband actually worked on the day of his death. When he returned home from work, he went into his truck and drove to a store. He died in the truck at the store's parking lot. A statement from the miner's employer, the Peabody Coal Company, confirms that he was actually employed through August 10, 1972, the date of his death, as a bulldozer operator, and performed the usual duties associated with such an occupation around a surface coal mine. Thus, at the very outset, it would appear that none of the requirements for eligibility to the benefits for which the claimant applied exist in this case. The miner was not entitled to black lung benefits at the time of his death; his death was attributed to a heart attack and not to pneumoconiosis; and

his continance in coal mine employment up to the date of his death would appear to negate the presence of a total disability by reason of pneumoconiosis at the time of his death.

There are, however, certain aspects of this case which require scrutiny and clarification, and for that reason, I arranged for the presence of a pulmonary disease specialist to serve as a medical advisor at the oral hearing.

The claimant testified, at the oral hearing, that her husband at one time had pulmonary tuberculosis; that she knew that he had black lung disease because he developed shortness of breath in the 1960's, and also a productive cough, spitting up black sputum.

The record shows that the miner did, indeed, have pulmonary tuberculosis in 1956, and was confined at a sanatorium for about two years. Oddly enough, he returned to strip mining in November 1958. He was involved in an accident in which he fractured his left shoulder and in which he suffered multiple rib fractures on the left and right sides. The x-rays which disclosed these injuries in August 1963 also showed that he had massive subcutaneous emphysema throughout the cervical region and along the left lateral chest wall. Both lung fields showed increased vascularity. Further the fractured ribs apparently penetrated a lung, resulting in a pneumothorax on the left side.

We were able to obtain certain chest x-rays made between June 16, 1959, and December 13, 1967. Dr. Tomashefski, who is the Chief of the Department of Pulmonary Diseases of the Cleveland Clinic and the Director of the Pulmonary Function Laboratory of that Clinic, examined these x-rays at the oral hearing, and he testified that the miner did have tuberculosis, which was ultimately resolved and which never recurred. He stated that the x-rays showed evidence of scarring on the lungs and

that "This is definitely a residual of tuberculosis". Dr. Tomashefski also examined the x-rays that were made after the miner suffered the rib fractures and the injury to his lungs, and he stated that he saw no evidence of nodules that one would see if there were silicosis or pneumoconiosis; that he did see evidence of calcium deposits, consistent with the healing of tuberculosis; that there is evidence of emphysema of a perifocal type, which is related to the tuberculosis that was present; that he saw evidence of pulmonary fibrosis, which is a scarring of the lung, and explained that this occurred because tuberculosis heals by scar formation; that the subcutaneous emphysema, referred to in the x-rays made in August 1963, resulted from the lung collapse and the escaping of air from the chest into subcutaneous tissue outside of the lungs. He stressed that this was not pulmonary emphysema and was entirely related to the accident suffered by the miner, and was not a consequence of mine work.

I proceeded to question the medical advisor as to whether the miner's heart disease could have been a consequence of lung disease (cor pulmonale). Dr. Tomashefski answered that there is no evidence in the record of this miner having had cor pulmonale or heart failure at any time. He pointed out that he died suddenly of an acute coronary thrombosis; that coronary thrombosis is unrelated to lung disease; and that many people have coronary artery disease and have heart attacks who have no lung trouble whatever.

On the basis of the entire record, as it presently exists, I find that the miner was not receiving black lung benefits at time of his death. On the contrary, he worked continuously and regularly at his mine employment up to and including the date of his death. It would be unrealistic to conclude that the miner died of a chronic dust disease of the lungs when his own physician reported that death was due to an acute coronary thrombosis. It would be even more unrealistic to find that the miner was totally disabled by pneumoconiosis at the time of his death when, in fact, he was continuing to work at his usual occupation as a miner and was so employed up to and including the date of his death.

Plaintiff contends that the Secretary's decision is not supported by substantial evidence because (1) it was based solely on negative x-rays and is contrary to the weight of the evidence; and (2) decedent died as a result of a respirable disease and is entitled to a presumption that he was disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(2). 20 C.F.R. § 410.462(a).

Plaintiff concedes that there is no x-ray evidence of pneumoconiosis. A lung biopsy by histological examination or autopsy was not performed; nor were pulmonary function studies ever made of decedent. Decedent's treating physicians never made a diagnosis of pneumoconiosis or of any respiratory disease other than tuberculosis.

Although there is no evidence of the thoroughness of the physician's examination, the death certificate states the cause of death as acute coronary thrombosis due to coronary artery disease. There is no evidence that decedent died of heart disease secondary to lung disease. Such heart failure would be manifested by congestion, swelling of the extremities, enlargement of the liver, and inability of the heart to pump an adequate amount of blood through the system. No such symptoms are of record.

All the available evidence is that decedent worked until the day he died; and that his death was not attributable to pneumoconiosis or other respirable disease. Even if the Court were to assume, as plaintiff suggests, that tuberculosis is a respirable disease which entitles the miner to a presumption of disability due to pneumoconiosis under the

provisions of 30 U.S.C. § 921(c)(2), there is no substantial evidence that decedent's death was attributable to tuberculosis. At the time of his death, decedent was suffering from moderately advanced pulmonary tuberculosis which was arrested. There is no evidence that tuberculosis caused his death.

Whereupon, the Court holds that plaintiff's motion is without merit, and therefore it is denied. The Court further holds that defendant's motion is meritorious, and therefore it is granted.

The decision of the Secretary of Health, Education and Welfare is hereby affirmed.

This action is hereby dismissed.